DETERMINED IN THE

# FIRST DEPARTMENT,

AT

## GENERAL TERM,

### March, 1879.

---

## THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, Appellant, *v.* THE BROADWAY AND SEVENTH AVENUE RAILROAD COMPANY, Respondent.

*A corporation accepting a charter, cannot question the validity of a burden imposed thereby — Chapter 513 of 1860 — License fees to be paid under.*

Defendant's charter (chap. 513 of 1860) provided that defendant should "be subject * * to the payment to the city of the same license fee, annually, for each car run therein, as is now paid by other city railroads in said city." An ordinance of the city provided that each passenger-car running in the city should pay fifty dollars a year for a license, except one-horse passenger-cars, which should pay twenty-five. Two of the companies then running in the city, by virtue of a contract with the city, paid no license fee on their cars. Two others paid the fee required by the ordinance, and one, by virtue of a special charter, paid a license fee of only twenty dollars per car.

In an action to recover license fees for the cars run by defendant, *held,* that defendant having accepted its charter, could not question the validity of the provision in question.

That the Legislature intended that the defendant should pay for its license the amount specified in the city ordinance.

APPEAL from a judgment in favor of the defendant, entered upon a verdict directed at the circuit.

The action was brought to recover $62,300, with interest, on the several installments thereof, as license fees on cars of defendant, which fees were alleged to be due to the plaintiff.

*W. C. Whitney*, for the appellant. It is a well-established principle of the English and American law, that all grants of privileges are to be liberally construed in favor of the public, and as against the grantees of the monopoly, franchise or charter, they are to be strictly interpreted. Any ambiguities in a grant must operate against the grantees, and in favor of the public. (Sedgwick on Statutory Law [2d ed.], 291; *Gildart v. Gladstone*, 11 East, 685; *Stourbridge Canal Company v. Wheeley*, 2 Barn. & Ad., 792; *Leeds and Liverpool Canal v. Huster*, 1 Barn. & Cress., 424; *The Kingston-Upon-Hull Dock Company v. La Marche*, 8 id., 42; *Priestly v. Foulds*, 2 Scott's New Reports, 205; *Bradley v. New York and New Haven Railroad Company*, 21 Conn., 294; *Rice v. Railroad Company*, 1 Black. [U. S.], 358; *The Florida, etc., Railroad Company v. The Pensacola, etc., Railroad Company*, 10 Florida, 145; *Alleghany v. Ohio and Pennsylvania Railroad Co.*, 26 Penn. St., 355; *Commonwealth v. Erie and Northeast Railroad Co.*, 27 id., 339; *Commonwealth v. Central Passenger Railway*, 52 id., 516.)

*Robinson & Scribner*, for the respondent. The common council had no power to impose any license fee upon the passenger-cars used on defendant's railroad. (*People v. Kerr*, 27 N. Y., 188; *Milhau v. Sharp*, id., 611; *Davis v. Mayor, etc.*, 14 N. Y., 506.) Whether the license fee claimed is regarded as a tax, or as a liability under contract, assumed by the grantees by acceptance of the grant, it is void in either case for uncertainty. (*Green v. Craft*, 28 Miss., 75; Blackwell on Tax Titles [4th ed.], *359, 396, and note; see also p. 381; *Roberts v. Chan Tin Pen*, 23 Cal., 259.) In the interpretation of statutes the same rule is applied as in the construction of wills, contracts and other instruments. (Dwarris on Stat. [Potter's ed.], 178.) The clause of the act of 1860 which is relied upon by plaintiff is void for uncertainty. (*Rex v. The Poor Law Commissioners*, 6 Ad. & Ell., 7 [Court King's Bench]; Dwarris on Stat. [Potter's ed.], 203, 204; *Smith v.*

*Mayor*, 1 Hun, 59; *Green* v. *Wood*, 7 Adol. & Ell. [N. S], 178 [7 Queen's Bench]; *Gwynne* v. *Burnell*, 1 Scott [N. R.], 818; *Hall* v. *Franklin*, 3 Mees. & Wel., 259–275; *Jones* v. *Smart*, 1 Durn & East, 52; *The King* v. *Skone*, 6 East, 518; *Haworth* v. *Osmerod*, 6 Q. B., 307; *People* v. *Woodruff*, 32 N. Y., 364; *United States* v. *Morse*, 3 Story, 87; *Commissioners of Louisburg* v. *Harris*, 7 Jones Law R. [N. C.], 281; *Peck* v. *Halsey*, 2 P. Wms., 387; *Webb's Case*, 1 Roll Abr., 609; *Jubber* v. *Jubber*, 9 Sim., 503; *Winter* v. *Perratt*, 9 Clark & Fin., 687; Year Book, 49 Ed., 3; *Trippe* v. *Frazier*, 4 Har. & John. [Md.], 446; *Dashiell* v. *Attorney-General*, 6 id., 1; *Jackson* v. *Craig*, 3 Eng. Law & Eq., 173; *Baker* v. *Newton*, 2 Beavan, 112; *Rosenplaenter* v. *Roessle*, 54 N. Y., 265.)

DAVIS, P. J.:

The defendant was incorporated by chapter 513 of the Laws of 1860. (Session Laws of 1860, 1042.)

By the second section of that chapter it was declared that the defendant " shall be subject * * * to the payment to the city of the same license fee annually for each car run thereon, as is now paid by other city railroads in said city." The defendant accepted its charter with this burden, and of course cannot be heard to object that it was or is illegal. At the time the charter was granted there was, as appears by the case, an ordinance of the city, passed by the common council December 13, 1858, which provided as follows :

" Section 1. Each and every passenger railroad car running in the city of New York, below One Hundred and Twenty-fifth street, shall pay into the city treasury the sum of fifty dollars annually for a license, a certificate of such payment to be procured from the mayor, except the small one-horse passenger-cars, which shall each pay the sum of twenty-five dollars annually for said license as aforesaid.

" Section 2. Each certificate of payment of license shall be affixed to some conspicuous place in the car, that it may be inspected by the proper officers.

" Section 3. For every passenger-car run upon any of the city railroads below One Hundred and Twenty-fifth street, without the

proper certificate of license, the proprietor or proprietors thereof shall be subject to a penalty of fifty dollars, to be recovered by the corporation attorney, as in the case of other penalties, and for the benefit of the city treasury."

In *The Mayor* v. *The Second Avenue Railroad* (32 N. Y., 261), and in *The Mayor* v. *The Third Avenue Railroad* (33 id., 42), it was held by the Court of Appeals that this ordinance was inoperative as against those companies respectively, on the ground that they were organized under contracts with the corporation of the city of New York (based upon considerations expressed in such contracts), conferring their rights and powers, and defining upon what terms those companies respectively might use the streets and run their railroad cars. Those cases, however, do not decide that such ordinances are invalid and inoperative upon street railroad corporations which are expressly subjected to the payment of license fees by their charters, which is the case of the defendant. The ordinance, therefore, remained in full force and vigor as against the defendant and all other street railroads, who are required, either by a legislative grant of power, or by any contract with the city conferring their powers, to pay such license. In all such cases a contract springs out of the charter or instrument creating the corporation, that it will pay the license, which the company is neither at liberty to repudiate nor refuse to perform. The defendant became, therefore, by the acceptance of the charter, liable to pay to the city the same license fee annually for each car run upon its road as was then paid by other city railroads in said city.

It appears that the defendant has never paid any license fees. The statement of the parties shows that the defendant, since the year 1864, has annually run a large number of cars upon its road ranging from seventy-three cars in the year 1864, to one hundred and twenty-eight cars in the year 1874, and that these cars were two-horse passenger-cars.

The plea of the statute of limitations was interposed, which would probably limit the right to recover for those run within the six years next previous to the commencement of the suit. In respect to the number of them upon which a right to recover exists (if it exists at all), the statute seems to leave no doubt. It

prescribes that the payment shall be made annually for each car run on the defendant's road; and this of necessity includes the whole number regularly run and used for the transportation of passengers during the whole or any part of each year. The defendant would not be liable upon the whole number of cars owned by it, but only upon the number actually run for the transportation of passengers continuously or occasionally in each year.

The averment of the complaint that in the year 1875 the ordinance ceased to operate by reason of the adoption of another ordinance upon the same subject is directly put in issue by the answer, and as no proof was given upon the question at the trial, if the fact was at all material, it is not before us at this time. This action is not brought to recover the penalty prescribed by the ordinance for the non-payment of the license, but upon the liability created by the ordinance and statute, in the nature of a contract to pay annually the sum for which the defendants should be adjudged liable. It is therefore, we think, not embarrassed by any question of failure on the part of the city to issue the license.

There remains only one question upon which we infer that the case was disposed of by the court below, and that is, whether or not the statute is void for uncertainty in not sufficiently defining what license fee shall be paid.

The language is, that the defendant shall be subject to the payment to the city of the same license fee annually for each car run thereon as is now paid by other city railroads in the said city. It was shown on the trial, by stipulation, that the Second and Third Avenue Railroad Companies paid no license fees; that the New York and Harlem Railroad Company paid in the year 1859 license fees of fifty dollars each on thirty-two horse-cars, but had paid none since. That the Sixth Avenue Railroad Company paid annually on two-horse cars license fees of fifty dollars, and on one-horse cars license of twenty-five dollars each. That the Eighth Avenue Railroad Company paid annually license fees of fifty dollars per car on two-horse cars, and twenty-five dollars per car on one-horse cars; and that the Ninth Avenue Railroad Company paid only a license fee of twenty dollars per car. It is claimed that this state of facts produces so much confusion, as to the amount paid by other city railroads, that that portion of the

respondent's charter becomes void for uncertainty. There is no ambiguity in the language of the charter itself. The uncertainty, if any, arises out of the extrinsic facts, and it is the duty of the court therefore to ascertain, if practicable, what the Legislature intended by the language used, in view of such facts, as they are shown by the case to have existed at the time the charter was granted.

It is quite manifest that the Legislature, in fixing the amount of the license to be paid by the defendant at the amount then paid by other city railroads in said city, had not in view railroads which were not liable, and therefore did not pay any license at all. The Second and Third Avenue Railroad Companies were in that condition; they neither paid nor were liable to pay, because they had contracts with the city which exempted them, according to the decision of the Court of Appeals, from any such liability. The Harlem railroad, so far as it paid at all, paid at the rate of fifty dollars per car. The Sixth Avenue and Eighth Avenue companies were then paying fifty dollars per car for each two-horse car, and twenty-five dollars for each one-horse car, and the Ninth Avenue Company were paying twenty dollars per car, which amount was specifically fixed by its charter. The words, " as now paid by other city railroads," must have reference to those roads which were actually then paying, and not to those which for any reason were not liable to pay, or were not in fact paying any license fee.

The only doubt then is, whether the liability was to pay the same amount as that paid by the Sixth and Eighth Avenue Railroads, or the amount which the Ninth Avenue Railroad was paying under its special charter. It seems very clear that the defendant was liable to make payment of one or the other of these amounts; either the fifty dollars paid by the companies first mentioned, or the twenty dollars paid by the last-named road; and that question depends upon whether the Legislature must be regarded as intending the amounts then fixed by the city ordinance, or the amount which had been specially fixed in a particular case by the Legislature itself.

It is the general rule, that in construing acts of the Legislature which confer rights and privileges upon corporations, and reserve

rights and impose duties towards the public, such construction as is most favorable to the public shall be given. (Sedgwick on Stat. Law [2d ed.], 291.)

We are inclined to think that the language used by the Legislature requires us to hold that the intention was that the defendant should pay the license fees then paid by other city railroads under the ordinances of the city. The language is in the plural, which seems to exclude the idea that the Legislature intended that the defendant should pay a sum fixed by a special charter in any one particular instance. It meant to subject it to the general rule affecting all other like railroads then subject to such rules, and thereby produce equality between it and such railroads; and hence, in construing the statute, it seems to be entirely right to hold that the Legislature had in view the general rules affecting the railroads then paying fifty dollars per annum, rather than a particular law which allowed one railroad to pay less. And it is very clear that the Legislature did not intend that the obligation to pay should be affected by the fact that some railroads were not liable, and therefore paid no license fee. We are of opinion, therefore, that the defendant is subjected by its charter to payment of the amount fixed by the ordinance of 1858, and that the court below should have so held.

The judgment must be reversed and a new trial ordered, with costs to abide event.

BRADY and INGALLS, JJ., concurred.

Judgment reversed; new trial ordered; costs to abide event.